SOPHIE G. LEHMAIER *vs.* ALVIN D. WADSWORTH ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

Argued February 4th—decided April 7th, 1937.

*Bernard A. Nevas,* with whom, on the brief, was *Leo Nevas,* for the appellant (plaintiff).

*Louis Goldschmidt,* with whom was *William F. Tammany,* for the appellees (defendants).

HINMAN, J. The named defendant, since September, 1924, has been the owner of a tract of land situated on the westerly side of West Rocks Road in Norwalk, comprising in the whole about seventy acres, of which forty acres have been used for the purposes here in question. This property was previously owned by Olaf Christianson, who commenced to develop it for the sale of home sites, caused to be made a map showing proposed streets and building lots, and sold two such lots. Wadsworth purchased the remaining land on an acreage basis. Soon afterward the forty-acre portion was used by or under him as a field for aeroplanes, a hangar was erected on it with accommodations for five planes, and members of the public were taken for rides in planes quartered there or which came on occasion for such purposes. Instruction in flying was also given. In 1928 the Connecticut state department of aeronautics approved the property as an airport. Under various managements the land continued to be used for these purposes, and in November, 1928, two air-meets were held there, each of which

attracted a large concourse of people. These meets consisted of a gathering of planes which engaged in stunt flying of various kinds, aerial games and exhibitions of parachute jumping. During the summer of 1929 similar events were held, the purpose being to advertise the field and thus to attract public patronage. No admission or parking charges were made to the public and no concessions were let for the sale of refreshments or other articles.

Prior to October 16th, 1929, there was no zoning ordinance in effect in the city of Norwalk, or other restrictions affecting the uses to which this property might be put, but on that date a zoning ordinance became effective, under which the defendant's land was located in an "A" residence zone. The ordinance contained provisions, however, that any nonconforming use existing at the time of its adoption "may be continued" but that "no nonconforming use shall, if once changed into a conforming use, be changed back again into a nonconforming use" and "no nonconforming use shall be extended so as to diminish the extent of a conforming use." Section VIII. Thereafter, this land continued to be similarly used, except that during 1930, 1931, and 1932 no air-meets were held.

In October, 1933, an air-meet was held there for the benefit of an injured flyer, on which occasion admission fees were charged and concessions were let for the sale of refreshments and other articles. On various occasions since, public air-meets have been held at which the public has been charged for the parking of cars on the field and on other land of the defendant and concessions have been let for the sale of refreshments, etc. The gathering of crowds of people and large numbers of automobiles at these meets and the operation of the planes participating have caused

noises the effect of which has been to disturb people living in the surrounding territory. The plaintiff's property comprises a spacious residence with two cottages and extensive grounds, the dwelling being located about two thousand feet from the nearest point of the defendant's land. Because of intervening trees the defendant's land cannot be seen from the plaintiff's dwelling. The trial court found that the plaintiff has suffered annoyance and disturbance by the conditions attending the air-meets but not, to any appreciable extent, by the other uses of the premises as an airport.

From the facts found, including the foregoing and others certain of which are mentioned hereafter, the trial court reached conclusions that the parking of cars for which a charge was collected, since October, 1933, and the granting of concessions for selling refreshments, etc., were new nonconforming uses violating the zoning ordinance, but that the plaintiff had proved no damage therefrom; that before the zoning ordinance took effect there had been an abandonment of use of the premises for air-meets, but that the right to hold them thereon still exists because the property had not been devoted to a conforming use prior to their resumption; and that the other uses, though nonconforming, were in existence when the ordinance took effect and their continuance was authorized by the provision therefor in Section VIII, above noted.

The principal efforts of the plaintiff on this appeal are directed, by way of claims for corrections in the finding and otherwise, toward establishing that the nonconforming uses prior to the taking effect of the ordinance were not continued, within the provisions of Section VIII, but had been abandoned and succeeded by a conforming use—specifically, a development of the land for residential purposes. The claim of sub-

stitution of a conforming use for these nonconforming uses rests largely upon the facts pertaining to and the significance to be attached to operations of the defendants, the finding as to which may be summarized as follows:  The defendant, after acquiring title to the land, "in a leisurely and somewhat desultory way" excavated a strip thirty feet wide substantially where a proposed street was located on the layout prepared by Christianson, the former owner; placed therein stones and boulders removed from the land and from stone walls thereon which were torn down, and the stones eventually were covered with dirt level with the adjacent land.  It was not fully completed until 1931, when it was hard-surfaced.  The trial court found that the primary purpose of these operations was to assist in draining the land so that it might be made better available for use as a landing and taking-off field for aeroplanes and at the same time provide a place for stone walls and boulders which it was necessary to remove in connection with the use of the premises for flying field purposes, and when completed and surfaced it provided a run-way for taking off and landing purposes when the wind was east or west.  "A secondary and tentative purpose was to provide a highway in case of any future development of the property for home sites."

This finding is supported by evidence the credibility of which was for the trial court, which it was open to it to accept, and which has some confirmation in the relevant circumstances, especially that the uses of the field for landing, storing planes, carrying passengers, and the like, were continued during the operation and after completion down to the date of this suit, and no other facts appear which indicate a present change to a real estate development.  The trial court was also at liberty to accept the explanation which deprived of

any significance of abandonment of airport uses the temporary removal of the sign from the hangar roof—the avoidance of danger to stranger planes in landing due to the uncovered condition of the excavation and stones therein, at the time. The temporary interruption or suspension of a nonconforming use without substitution of a conforming one or such a definite and substantial departure from previously existing conditions and uses as to signify an abandonment of the latter, does not terminate the right to resume them. *Darien* v. *Webb*, 115 Conn. 581, 586, 162 Atl. 690; *State ex rel. Schartz* v. *Manders*, 206 Wis. 121, 238 N. W. 835. Even if the defendant had in mind the possibility of a future change in use, so long as his operations had a legitimate present purpose and utility appropriate to the existing uses there would not be such departure from the latter as to require a finding of a present change terminating his right to continue them. No such substantial change can be made in the finding as would vitiate the conclusion that the property has not been devoted to a conforming use in substitution for those which were nonconforming.

If the holding of air-meets was to be regarded as a separate and distinct use, abandonment thereof might have terminated the right to afterward resume them but for the provision in the ordinance (Section VIII b.) that no nonconforming use shall be extended "so as to diminish the extent of a conforming use." As, upon the finding, the entire premises in question were devoted to no other than airport uses, extension of those uses to include air-meets cannot be said to have diminished the extent of any conforming use, and the trial court was correct in concluding that the defendants were entitled to use the property for that purpose.

If the conclusions that the imposition of charges for parking and the letting of concessions were extensions

of the previously existing nonconforming uses which violated the zoning ordinance, not being attacked, naturally, by the appellants, be accorded effect notwithstanding that it does not appear that the effect of these new uses was to diminish the extent of any conforming use, the violation would pertain only to the extended uses and would not, as the appellant claims, work a loss of the other nonconforming uses. The further conclusion that the plaintiff had failed to prove any such damage to her property from the parking of cars and granting of concessions as would entitle her to injunctive relief against violation, thereby, of the ordinance is quite warranted; there is lacking any finding of such damage by way of impairment of value or otherwise, as is essential to the right of an individual to enforce zoning ordinances by injunction. *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 482, 138 Atl. 483; S. C., 110 Conn. 130, 137, 147 Atl. 513.

The finding states, with ample support from the record, that on the trial the plaintiff predicated her claim for relief solely upon violation of the zoning ordinance and expressly disclaimed reliance upon any contention that the activities of the defendants constituted a public nuisance inflicting damage special to her or her property. Consequently the appellant is not entitled to pursue, in this court, the latter claim. *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 Atl. 231, Practice Book, § 363. The considerations which may warrant discussion of matters not raised on the trial do not extend to issues specifically disclaimed in the trial court.

There is no error.

In this opinion the other judges concurred.