LEON CHAYT ET AL. *v.* BOARD OF ZONING
APPEALS ET AL.

[No. 27, October Term, 1939.]

428

*Decided December 13th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*William Hoffenberg* and *Robert R. Bowie,* with whom were *Bowie & Burke* on the brief, for the appellants.

*J. Frances Ireton, Assistant City Solicitor,* with whom was *Charles C. G. Evans, City Solicitor,* on the brief, for the Board of Zoning Appeals, the Mayor and City Council, the Chief Engineer of the City, and the Buildings Engineer, appellees.

*William A. Grimes,* with whom were *Stuart S. Janney* and *Ritchie, Janney, Ober & Williams* on the brief, for Frainie Brothers, appellees.

Bond, C. J., delivered the opinion of the Court.

The appellants, owners and occupants of a dwelling on land to the north of the enclosure of the Pimlico race track in Baltimore City, seek an injunction to restrain the erection of stables of frame construction between the dwelling and the enclosure, on the ground that the area is zoned as a residential section, and this is a non-conforming use not permitted by the Zoning Ordinance. Ordinance No. 1247, approved March 30th, 1931. The appellees, more particularly the building contractors, Frainie Brothers, employed by the track owner, the Maryland Jockey Club, rest the defense primarily upon the exception in the ordinance permitting a non-conforming use "that now exists," that is, existed at the time of the passage of the ordinance in 1931, and the permission of a limited extension of it, contending that the land is adjacent to the enclosure and that, although it has been vacant except for houses on it owned by the club, most of it was bought before the passage of the ordinance, with the intention that, after purchase of further land, now recently acquired, it should all be used for stables for an increased number of horses at the track. The word "used" is declared in the ordinance to include the words "arranged, intended or designed to be used, * * * unless the contrary clearly appears from the text." An application to the buildings engineer for permission to erect the stables was denied because of the non-conformity, but on appeal the Board of Zoning Appeals, considering that the use would be within the scope of the business of the club and part of its lot used for commercial purposes, permitted it. On an appeal by the present appellants the court below affirmed the action of the Board, and the appeal to this court has followed.

The whole district concerned, including the northerly portion of the track enclosure, was at some time in the past platted in streets and lots for dwellings, with most of the lots made twenty-five feet wide; and the developers gave the section the name of Avondale. Dwellings have been built on a number of the lots. Immediately north of

the present track enclosure, a public street called Ingleside Avenue was laid out, and cement sidewalks constructed, but there was never any surfacing of the street bed, and it was allowed to become covered with wild growth. The enclosure of the track property on the south side of that street and elsewhere has been by a heavy wire fence, called a cyclone fence. Lots on the north side, between a fifteen foot alley on the east and a Winner Avenue on the west, are numbered on the plats in evidence, beginning at the alley on the east, 22 to 36, and all these have now been bought by the Jockey Club. Two of them, numbered 31 and 32, were in 1931 improved by a dwelling house, which was subsequently rented out by the club. Lots numbered 27 and 28 were subject to a restriction by covenant in a deed, requiring that dwellings should be erected fifteen feet back from Ingleside Avenue, and at a minimum cost. In addition, the club had acquired two contiguous lots on the next street to the north, Rogers Avenue, and still other lots, some improved, some unimproved, by dwellings, on the north side of Rogers Avenue and on the west side of Winner Avenue; but the club is not ready to use those lots at present. A parking space outside the enclosure was maintained, and there was property owned at a distance, not in the same neighborhood.

The Ingleside Avenue lots, 22 to 32, were bought in 1929, after passage of a previous restraining ordinance, but before the passage of that now in force. And it was testified by the manager of the club that the intention in the purchase was to hold them until lots 33 to 36 might be acquired, and then to erect stables on the whole, Lots 33 to 36 were acquired in 1938, seven years after the enactment of the existing zoning ordinance, and the plans of the stables provide for actual construction on all but lots 35 and 36. There is no dispute of the non-conformity of use as a stable in this district. The primary dispute, as stated, is on the question whether the long contemplated use of the lots first bought can be classed as a use that existed at the time of the passage of the ordinance;

and if it can, then there is a question of the legality of the extension over lots 33 and 34, or, if it cannot, there is argued in the briefs, but we understand not now pressed, another question, of the power of the Board of Zoning Appeals to make an exception in this instance.

The Board of Zoning Appeals and the court below took into consideration, in reaching their conclusion, the facts that holding land for expansion of the business was a natural incident of it, that this land was adjacent to the existing track enclosure, and had been included in a comprehensive plan for expansion sketched out before 1931, and they thought it could be regarded as in use within the meaning of the ordinance, much as open land within the enclosure and used incidentally might be. But this land was not in actual use. It was then vacant, overgrown, across a public street, and without the planned usefulness until additional property should be bought, as it was nine years later.

Paragraph 11 of the Ordinance, passed in 1931, on the subject of "Non-conforming Uses," provided more fully that, "A non-conforming use is a use that now exists and does not comply with the regulations for the use district in which it is established." And it closed with, "Nothing contained in this ordinance shall be construed to prevent the continuance of any use which now legally exists." Taking them alone, at their ordinary meaning, these words, "A use that now exists," or "now legally exists," would somewhat emphatically exclude a use merely contemplated for the future, but unrealized. And it would be unlikely that a zoning ordinance would make provision for so unsubstantial a thing as a plan in mind. Use, under the ordinance, is a subject of regulation and restraint. Paragraphs 31, 37 and 39. A non-conforming use is something that might be changed by the user only within limits imposed. "A non-conforming use may be changed to a use of a higher classification. A non-conforming use, if changed to a use of a higher classification, may not thereafter be changed to a use of a lower classification." Paragraph 11. A use merely contemplated,

and unrealized, would certainly not be susceptible to such control. The law would not be concerned to regulate a change of intention. Again, any land held for a future contemplated use might be already improved, and in another use, as some of these lots were, and if the contemplated new use could be considered one "that now existed" at the time of the passage of the ordinance, there would have been two uses existing. The provision, or definition, of non-conforming use is substantially the same as that which appears in ordinances of other jurisdictions, allowing the inharmonious improvements found in districts zoned for the higher uses. "The usual zoning ordinance does not require a change in the uses made of property at the time of passage of the law." 14 *Minn. Law Rev.* 86. "Non-conforming buildings and uses existing when an ordinance goes into effect are allowed to continue. It has been considered that buildings erected according to law, even if out of place, should be allowed to stand indefinitely, and that the non-conforming use should not be stopped." *Bassett, Zoning,* 105. "It is customary for zoning ordinances to provide that a then existing and used structure may continue to be employed for its then purposes, though its location and uses may be at variance with, and not in conformity with, such respective ordinance." *Metzenbaum, Law of Zoning,* 287.

These considerations to the contrary notwithstanding, it is argued that paragraph 44 of the ordinance expressly permits the inclusion of a merely intended future use, in its provision that, "the word 'used' includes the words 'arranged, intended or designed to be used.'" But the quoted group of words "arranged, intended or designed," is found to refer elsewhere only to the character or purpose of buildings, actual structures. Each of the several paragraphs defining use districts, paragraphs 4, 6, 7, 8 and 9, begins with:

"(a) no land or building shall be used;

"(b) no building shall be constructed which is arranged, intended or designed to be used;

"(c) no building shall be extended where such extension is arranged, intended or designed to be used;

"(d) no building shall be altered where such alteration is arranged, intended or designed to change any use into a use for,"—any of the listed uses prohibited for the district.

Whatever the effect of the use in paragraph 44 of quotation marks for the words "arranged, intended or designed," as a reference to the words elsewhere, we must presume that so grouped they had for the draftsmen the same meaning in all parts of the ordinance. *State v. Knowles,* 90 Md. 646, 654, 45 A. 877; *Roberts v. Gibson's Excr.* 6 H. & J. 116, 124; *School Commrs. v. Goldsborough,* 90 Md. 193, 202, 44 A. 1055; *Calvert County v. Monnett,* 164 Md. 101, 104, 164 A. 155; *Baltimore & A. R. Co. v. Litchenberg,* 176 Md. 383, 4 A. 2nd 734. And when used elsewhere they referred to character and purpose of improvements, not to projects not begun. The association of the word "intended" with "arranged or designed" shows it to be used in connection with that which might be arranged or designed, that is, an actual improvement. "To the language of the act must be applied the rule common in the construction of statutes, that when two or more words of analogous meaning are coupled together they are understood to be used in their cognate sense, express the same relations and give color and expression to each other." *Perkins v. Barr,* 126 Md. 91, 95, 94 A. 533, 534; *Lewis v. Fisher,* 80 Md. 139, 30 A. 608; *American Casualty Insurance Company's Case,* 82 Md. 535, 34 A. 778, 38 *L. R. A.* 97.

Including the words in the word "used" serves to provide for a necessity commonly felt, of allowing for the suspension of an actual use. *Landay v. Zoning Appeals Board,* 173 Md. 460, 196 A. 293. "Where a property is built for or adapted to a particular use, the question of existing use is determined by ascertaining as near as possible the intention of the owner, in connection with the fact of a discontinuance or apparent abandonment of use; it is not to be determined on the date of the adoption of the ordinance." *Appeal of Haller Baking Co.,* 295 Pa. 257, 262, 145 A. 77, 79. And see *Adams v. Kalamazoo Ice*

*Co.,* 245 Mich. 261, 264, 222 N. W. 86; *State ex rel. Schaetz v. Manders,* 206 Wis. 121, 238 N. W. 835; *Lehmaier v. Wadsworth,* 122 Conn. 571, 191 A. 539. The same words appear employed in zoning ordinances generally, always with the meaning and purpose here described. See *People ex rel. Wohl v. Leo,* 109 Misc. 448, 178 N. Y. Supp 851, affirmed without opinion, 201 App. Div. 857, 192 N. Y. S. 945; *State v. Hillman,* 110 Conn. 92, 147 A. 294; *Thayer v. Board of Appeals,* 114 Conn. 15, 157 A. 273.

Therefore, on the question whether the terms of the ordinance permit classifying a purpose then merely contemplated, or intended for the future, as a use that existed at the time of the passage of the ordinance, the conclusion of this court has differed from that of the court below. "As understood in the ordinance, 'existing use' should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose; i. e., the conduct of a business. Ordinarily an existing use for business combines two factors: (a) Construction or adaptability of a building or room for the purpose, and (b) employment of the building or room or land within the purpose." *Appeal of Haller Baking Co.,* 295 Pa. 257, 261, 145 A. 77, 79; *Spencer-Sturla Co. v. Memphis,* 155 Tenn. 70, 88, 290 S. W. 608.

That the holding of land for future expansion might be a natural incident of the business could not affect the problem. The ordinance deals with uses made of land, not with businesses and their needs or plans. It has made allowance for the continuance of non-conforming uses of land found in 1931; it has not left such uses open to expansion as businesses might render expansion desirable. On the contrary it has restricted them. Even expansion to another portion of a non-conforming building is made subject to a condition. "A non-conforming use may not be extended, except as hereinafter provided, but the extension of a use to any portion of a building, which building is now arranged or designed for such non-con-

forming use, shall not be deemed to be an extension of a non-conforming use." Paragraph 11. And by paragraph 12 (b) the Board of Zoning Appeals has been given power to permit in its discretion "a use of the same classification necessary or incidental to a non-conforming use now existing in a first commercial or in a residential district within fifty feet from such existing non-conforming use, provided such fifty foot measurement shall not extend across a street." Open areas in use with improvements would be found existing, but to be excepted from the restriction of the ordinance they must have been found in use. *Roach v. Board of Zoning Appeals*, 175 Md. 1, 199 A. 812. Merely because of the plan for expansion this land could not be regarded as used with that used in the enclosure. It was separate, and had in 1931 no connection with land in the enclosure except for the common ownership. The plan for expansion was only a plan, not a use. Wisely or unwisely, in the zoning of the area as a residential area, the use was restricted; land held for future use was not excepted.

The court does not understand it to be argued that stopping the expansion of non-conforming uses is an unreasonable, arbitrary, or oppressive exercise of governmental power. *Lipsitz v. Parr*, 164 Md. 222, 234, 164 A. 743.

Decisions on the subject in other jurisdictions appear to support the views here expressed, some of them going farther in restricting expansion of non-conforming uses than is necessary for the purposes of this case. See *West Bros. Co. v. Alexandria*, 169 Va. 271, 192 S. E. 881; *Lehmaier v. Wadsworth*, 122 Conn. 571, 191 A. 539; *Adams v. Kalamazoo Ice Co.*, 245 Mich. 261, 222 N. W. 86; *Brett v. Building Commissioner*, 250 Mass. 73, 145 N. E. 269; *Spector v. Building Inspector*, 250 Mass. 63, 145 N. E. 265; *Appeal of Haller Baking Co.*, 295 Pa. 257, 145 A. 77; *State ex rel. Schaetz v. Manders*, 206 Wis. 121, 238 N. W. 835; *Thayer v. Board of Appeals*, 114 Conn. 15, 157 A. 273; *State v. Hillman*, 110 Conn. 92, 147 A. 294; *Piccolo v. West Haven*, 120 Conn. 449, 181 A. 615; *DeVito v. Pearsall*, 115 N. J. L. 323, 180 A. 202; *State*

*v. McDonald,* 168 La. 172, 121 So. 613, *certiorari* denied, 280 U. S. 556, 50 S. Ct. 16, 74 L. Ed. 612; *State v. Jacoby,* 168 La. 752, 123 So. 314.

The power given to the Board of Zoning Appeals to make exceptions is found in paragraphs 32 and 33, and has been held to violate the Constitution in its breadth. *Jack Lewis, Inc. v. Mayor & City Council,* 164 Md. 146, 164 A. 220; *Sugar v. North Baltimore M. E. Church,* 164 Md. 487, 165 A. 703. And the ordinance could not be construed to intend the fullest possible breadth of the words, for if the Board might make exceptions without limit, the carefully framed provisions of the law would have no value. The contention discussed in the briefs is that power may still be validly implied from the provision in paragraph 32 (j), which restrains the making of exceptions to cases in which no hazards from fire or disease are created by it, or the public health, security or morals are not menaced. The court cannot find any power open to implication in that section, for it is merely one to restrain power given elsewhere; and it is that power given elsewhere that has been found excessive and invalid. But in this case it seems unnecessary to say more than that it could not, consistently with the purpose of the ordinance, sanction the expansion of a non-conforming use to such an extent as has been planned. The power refers to less radical adjustments. Further, bringing frame stables so large, with the hay and other feed for horses, and the bedding, up to the rear of residences, obviously does create a fire hazard.

The order appealed from must be reversed and the case remanded for passage of an order restraining the use as proposed, because not permitted under the Zoning Ordinance of the City.

> *Order reversed, and case remanded for passage of an order in accordance with this opinion.*

OFFUTT, SLOAN, and DELAPLAINE, JJ., dissent.