[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision by the defendant Branford Zoning Board of Appeals to uphold a cease and desist order issued by the Branford Zoning Enforcement Officer that ordered the defendants Warren M. Newton, Jr. and Gerald J. Beauton, Jr. to cease and desist the use of their property as a private truck repair and storage yard operated by another plaintiff, Transport Leasing System's Inc. The town of Branford is also named as a defendant.
The plaintiffs, Warren M. Newton, Jr. and Gerald J. Beauton, Jr., are the owners of property in Branford. The property is currently leased by another plaintiff, Transport Leasing Systems, Inc. (hereinafter "Transport"). (Return of Record (ROR), Exhibit U). Transport uses the property as a private repair garage for trucks and tractor-trailers. (ROR, Exhibit III, pp. 140, 144-47).
The plaintiffs Newton and Beauton have owned the property since 1965. (ROR, Exhibit D). The property was first used by the plaintiffs (under various identities) as a private storage and repair area for construction equipment, including trucks, from 1952 until 1965. (ROR, Exhibit III, p. 75). During this CT Page 5458 period, in 1956, Branford adopted zoning regulations. (ROR, Exhibit C). The property was zoned residential under the zoning regulations making the existing use as a repair and storage area for construction equipment, including trucks, a legally existing nonconforming use. (ROR, Exhibit C).
In 1965, Beauton and Newton obtained a used vehicle dealer's license pursuant to General Statutes 14-51 et seq., under the name of New England Construction Corporation. (ROR, Exhibits E1 and F). Thereafter, Newton and Beauton used the property for the sale and repair of automobiles. (ROR, Exhibit III, pp. 76, 84-85). Newton testified that the property continued to be used as a private storage and repair yard for trucks and construction equipment. (ROR, Exhibit III, pp. 76, 84-85). In 1969, the property was rezoned to C-1, a commercial zone that permitted as of right automobile sales and repairs. (ROR, Exhibit C). From 1972 to 1975, the property was leased by A. Torello Trucking, who used the property as a private truck storage and repair yard. Apparently the lessees did not sell trucks or equipment on the property. (ROR, Exhibits H and III, p. 92). From 1975 to 1990, various lessees operated used car and truck sales and repair businesses on the property. (ROR, Exhibits I and J). In 1973, the property was rezoned from a general commercial zone to its current BL-1 zone. Vehicle (of any kind) repair and/or storage is not a permitted use in this zone except by special exception and site plan approval. (ROR, Exhibit LLL). The record does not indicate that site plan approval or a special exception was ever granted for a vehicle repair business. In March of 1991, Transport leased the property as a private repair garage for trucks and tractor-trailers. (ROR, Exhibit III, pp. 140, 144-47).
On July 22, 1991, the Branford Zoning Enforcement Officer (hereinafter "ZEO") issued a cease and desist order regarding Transport's use of the property. The order cited numerous violations of the Branford Zoning Regulations including:
 (1) occupation/change of use of property without a certification of zoning compliance;
 (2) resumption of a discontinued nonconforming use;
 (3) resumption of a nonconforming use after said use was made conforming; and
CT Page 5459
 (4) operation of a use requiring a special exception without having acquired said special exception.
(ROR, Exhibit X). The plaintiffs appealed the cease and desist order to the Branford Zoning Board of Appeals (hereinafter "ZBA"). The ZBA held hearings regarding the cease and desist order on November 8, 1991, December 2, 1991 and January 27, 1992. (ROR, Exhibits HHH, III, and JJJ). On March 31, 1992, the ZBA denied the plaintiffs' appeal of the cease and desist order because the plaintiffs ailed to prove that use of the subject property was a continuous nonconforming use. (ROR, Exhibit FF). The decision was published on April 9, 1992. On April 21, 1992, the plaintiffs commenced this appeal by service of process on the chairman of the Branford ZBA and the clerk of the Branford ZBA for the defendant ZBA and on the Branford town clerk for the defendant town.
The plaintiffs raise three issues on appeal:
 (1) The record in the case returned to the court is grossly inadequate or the Superior Court to review the decision of the ZBA.
 (2) The ZBA permitted evidence over the objection of the plaintiffs that was irrelevant, immaterial, and highly prejudicial to the plaintiffs.
 (3) The ZBA ignored the evidence in reaching its decision and failed to reasonably review the exhibits filed in support of the appeal.
On July 23, 1992, the ZBA moved to cite in a party defendant, Branford Office Ventures (hereinafter "BOV" ). BOV is an owner of property abutting the subject property and was an intervenor in the proceedings before the ZBA. The motion to cite in BOV was granted on September 3, 1992 and BOV filed an appearance on the same date.
On October 29, 1992, BOV filed a memorandum of law in opposition to the plaintiffs' appeal. The ZBA adopts this memorandum. In the memorandum, BOV argues that the ZBA's decision to uphold the cease and desist order because Transport CT Page 5460 failed to prove that the use of the subject property was a continuous nonconforming use was supported by the record.
Aggrievement is a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and Zoning Commission,219 Conn. 303, 307, 592 A.2d 953 (1991). Unless the plaintiff alleges and proves aggrievement, his or her appeal must be dismissed. DiBonaventura v. Zoning Board of Appeals, 24 Conn. App. 369,373, 573 A.2d 1222 (1991).
The court, Burns, J., found aggrievement at the appeal hearing on December 15, 1992.
BURDEN OF PROOF; SCOPE OF JUDICIAL INQUIRY
The plaintiff bears the burden of proof to demonstrate that the board acted improperly. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). "Conclusions reached by [a local board] must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission,211 Conn. 85, 96, 558 A.2d 646 (1989).
 "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [has] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Citations omitted.)
Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). "In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid CT Page 5461 reasons. Id.
THE ADEQUACY OF THE RETURN OF RECORD
General Statutes 8-7a requires the ZBA to record the evidence presented at each hearing before the ZBA in which a right to appeal lies.
On an appeal, the board shall transmit the record of the proceedings before it to the court. General Statutes 8-8(i). The record of the ZBA includes all of the evidence introduced to and accepted by the ZBA relating to issue under consideration. Lathrop v. Planning and Zoning Commission, 169 Conn. 215, 219,319 A.2d 376 (1973). The ZBA adhered to this requirement and returned to the court a sufficient record for review.
It is conceded that the transcript has gaps in it. Nevertheless, an incomplete transcript is not a ground for affirming an appeal. The court on appeal shall review the proceedings of said board and shall allow any party to such appeal to introduce evidence in addition to the contents of the record of the case returned by said board if the record does not contain a complete transcript. General Statutes 8-8(k). The plaintiffs have not requested an opportunity to introduce evidence to complete the record.
ABANDONMENT OF NONCONFORMING USES
The Branford zoning regulations 5.2 defines a "nonconforming use" as:
 One which existed lawfully, whether by variance or otherwise, on the date these Regulations or any amendments hereto became effective, and which fails to conform to one or more of the provisions of these Regulations or such amendment hereto.
A nonconforming use which has been discontinued with intent to abandon, or which has been discontinued for a period of one year (for the property) or two years (for the structures), cannot be replaced with another nonconforming use. (Zoning Regulations, 5.5). Further, existing nonconforming uses cannot be changed to any use which is substantially different in nature and purpose from the former nonconforming use except such uses that are CT Page 5462 permitted in the underlying district. (Zoning Regulations, 5.8). Finally a nonconforming use changed to a conforming use shall not thereafter be changed back to a nonconforming use. (Zoning Regulations, 5.8).
The party claiming the benefit of a nonconforming use bears the burden of proving a valid nonconforming use exists. Cummings v. Tripp, 204 Conn. 67, 82-83, 527 A.2d 230 (1979). The legality of an extension of a nonconforming use is a question of fact. Id., 82. In deciding whether a current activity is within the scope of a nonconforming use, consideration should be given to three factors:
 (1) the extent to which the current use reflects the nature and purpose of the original use;
 (2) differences in the character, nature and kind of use involved; and
 (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property.
Zachs v. Zoning Board of Appeals, 218 Conn. 324, 332,589 A.2d 351 (1992).
As to abandonment, "[t]he temporary interruption or suspension of a nonconforming use without substitution of a conforming one or such a definite and substantial departure from previously existing conditions and uses as to signify abandonment of the later, does not terminate the right to resume them." Point O'Woods Assn. v. Zoning Board of Appeals, supra, 369, quoting Lehmaier v. Wadsworth, 122 Conn. 571, 576, 191 A. 539
(1937). "[T]he mere discontinuance in use where there is no intent to abandon does not terminate a valid nonconforming use." Friedson v. Westport, 181 Conn. 230, 234, 435 A.2d 17 (1980); see also General Statutes 8-2(a). Nevertheless, an intent to abandon can be inferred from surrounding circumstances. Blum v. Lisbon Leasing Corp., 173 Conn. 175, 182, 377 A.2d 280 (1977).
The record includes a detailed history of the uses of the property. (ROR, Exhibits HHH, III, JJJ, C, D). The property was first used by the plaintiffs (under various identities) as a private storage and repair area for their own construction CT Page 5463 equipment, which included trucks, from 1952 to 1965. From 1952 to 1956, the town did not have zoning. In 1956, the town adopted zoning regulations and the property was zoned residential. Therefore, from 1956 to 1965 a nonconforming use, a private repair and storage yard for construction equipment, legally existed on the property.
In 1965, Beauton and Newton obtained a used vehicle dealer's license pursuant to General Statutes 14-51 et seq. under the name of New England Construction Corporation. (ROR, Exhibits E1 and F). Thereafter, Newton and Beauton used the property for the sale and repair of automobiles for the public as well as the occasional repair of both its own and other party's trucks and construction equipment. Therefore, from 1965 to 1969, one nonconforming use, the repair and storage of construction equipment, continued and another use, the sale and repair of automobiles and trucks for the public began.
In 1969, the property was rezoned to C-1, a commercial zone that permitted as of right automobile sales and repairs. (ROR, Exhibit C). Therefore, from 1969 to 1972, the use of the property for the sale and repair of automobiles became a permitted use while the use of the property for storage and repair of trucks and construction equipment was a continuation of the previous nonconforming use.
In 1972, the property was leased to A. Torello Trucking who used the property as a private truck storage and repair yard. The lessee did not sell trucks or equipment on the property. (ROR, Exhibits H, III, p. 92). Therefore, from 1972 to 1973, the use of the property as a private truck repair and storage yard was a continuation of a previous nonconforming use of the property, namely the use between 1956 and 1972 by Beauton and Newton as a private construction equipment and truck repair and storage yard.
In 1973, the property was rezoned from a general commercial zone to its current classification, BL-1. In the BL-1 zone, vehicle (of any kind) repair and/or storage is not a permitted use except by special exception or special permit. Nevertheless, the use of the property from 1973 to 1975 by A. Torello Trucking as a private truck repair and storage yard was a continuation of a previous nonconforming use of the property. To sum up, from 1956 to 1975 the property never stopped being used as a private truck repair and storage yard albeit Newton and Beauton also sold CT Page 5464 automobiles and made repairs for the public while A. Torello Trucking only operated a private truck repair and storage yard. (ROR, Exhibit III, pp. 89-94, 107).
From 1975 to 1990, the property was leased by various entities and used as car and truck repair and sale yard for the public. (ROR, Exhibit III, pp. 93-138). These lessees operated under state-issued used vehicle dealer's licenses. (ROR, Exhibits I, J). The use between 1975 and 1990 was not a continuation of the previous use by A. Torello Trucking, namely, a private heavy-duty truck storage and repair yard from 1972 to 1975. Rather, the use from 1975 to 1990 was a different use, namely, the public sale and repair of automobiles and trucks of all types. For example, the most recent lessee of the yard previous to transport testified that 60% of his business was general heavy and medium duty truck repair for the public and 40% automobile sales. (ROR, Exhibit III, p. 36).
In March of 1991, Transport leased the property as a repair and storage yard for its own trucks, without public sales of repair. Other parties used the yard to repair their own trucks. (ROR, Exhibit III, p. 144). This use most closely resembles A. Torello's use of the property from 1972 to 1975.
The ZBA found that Transport's use was not a continuous nonconforming use. Implicit in that finding is that the existing use is either a substantial change from the previous use (the 1975 to 1990 use of the property for auto sales and repairs for the public) or the reestablishment of a previous nonconforming use (the 1972 to 1975 use by A. Torello Trucking as a private repair and storage yard) that was abandoned in 1972.
First, it was reasonable for the ZBA to find that the current use of the property as a private heavy-duty truck repair and storage yard was not within the scope of the previous use of the property as an automobile sales and general truck repair lot operated for the public. Also, it was reasonable for the ZBA to find that there was an intent to abandon the previous use of the property as a private truck repair and storage yard in 1975 when the property began to be used as an automobile sales and general truck repair lot operated for the public, use continued through 1990. Further, the intent to abandon was accompanied by physical abandonment. Therefore, it was reasonable for the ZBA to find that resuming the use of the property as a private heavy-duty truck repair and storage yard for the lessee's own vehicles in CT Page 5465 1991 was an attempt to reestablish a nonconforming use abandoned in 1975. The ZBA's findings are supported by the record and, therefore, the appeal is dismissed.
PREJUDICIAL EVIDENCE
The plaintiffs claim that BOV introduced new evidence during the ZBA appeal hearing which was not before the ZEO when the ZEO issued the cease and desist order.
A ZBA has all the power of the officer from whom the appeal has been taken and can remake the decision as in its opinion it ought to have been made. General Statutes 8-7. Review of the ZEO's decision by the ZBA is de novo. See Caserta v. Zoning Board of Appeals, 23 Conn. App. 232, 237, 580 A.2d 528 (1988). Therefore, the ZBA can consider evidence not before the ZEO.
The plaintiffs also claim that prejudicial evidence was included in the return of record that was objected to at the appeal hearing and excluded by the ZBA chairman and that the ZBA considered written summaries of tapes of the appeal hearings made by the ZEO.
 Although proceedings before a ZBA . . . are informal and are conducted without regard to the strict rules of evidence, the hearing must be conducted so as not to violate the fundamental rules of natural justice. . . . Parties involved have a right to produce relevant evidence and an opportunity to know the facts on which the agency is asked to act, to cross-examine the witnesses and to offer rebuttal evidence.
Palmisano v. Conservation Commission, 27 Conn. App. 543, 546-47,608 A.2d 100 (1992). If the ZBA had sufficient evidence on the record to support its decision, the court will not look behind the reasons for its decision to speculate on other influences. Dram Associates v. Planning Zoning Commission, 21 Conn. App. 538,544, 547 A.2d 1317 (1990). Generally, the receipt of prejudicial, irrelevant evidence is harmless error if sufficient evidence exists on the record to support the zoning authority's decision. First Hartford Realty Corp. v. Planning and Zoning Commission, 165 Conn. 533, 545, 338 A.2d 490 (1973). CT Page 5466
In the instant case, the evidence on the record, as shown in the preceding analysis, was sufficient to support the ZBA's decision to uphold the ZEO's cease and desist order. There is no indication that the ZBA relied on any evidence which was prejudicial and/or irrelevant in reaching its decision. Therefore, if the ZBA did admit any prejudicial and/or irrelevant evidence, this was harmless error.
Robert P. Burns, Judge