EMMA D. ROACH, TRUSTEE, *v.* BOARD OF ZONING
APPEALS

[No. 29, April Term, 1938.]

*Decided June 14th, 1938.*

2

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Wirt A. Duvall, Jr.*, for the appellant.

*Meyer Reamer*, with whom was *William Curran* on the brief, for Louis and Minnie Shane, appellees.

*J. Francis Ireton, Assistant City Solicitor*, with whom was *R. E. Lee Marshall, City Solicitor*, on the brief, for the Board of Zoning Appeals.

SLOAN, J., delivered the opinion of the Court.

Morris Lipsitz was the owner of a lot fronting 94 feet on the north side of Winchester Street and 136 feet on the west side of Calhoun Street in the City of Baltimore, which he bought in 1930, and on which he conducted the business of "Planing Mill, Woodwork machines, and different things, lumber, and so on, all kinds of materials," there trading as Northwestern Lumber Company. In 1932 he erected an ice factory on the corner, 50 by 50 feet, which was operated by him and Louis Shane, one of the appellees, as partners, until in 1937, when Shane bought the entire lot, and the interest of Lipsitz in the ice factory. Shane now proposes to extend his ice factory and storage over the entire lot, and applied to the City Engineer of Baltimore for a permit to make the extension in accordance with the provisions of the Zoning Ordinance, No. 1247, approved March 30th, 1931, (amended as hereinafter noted, by Ordinance No. 503, September 19th, 1933), which was refused by the City

Engineer, August 31st, 1937, on the ground that the use applied for did not conform to the use classification of the ordinance. Shane gave notice of an appeal to the Board of Zoning Appeals within ten days and after a public hearing the Board granted a permit, finding, as stated in their answer on appeal, that "it appeared that the premises in question were used and had been used for ten or twelve years as a saw and planing mill and a lumber yard, the said use as a planing mill constituting an Industrial use, which was non-conforming and that * * * under Paragraph 11 of the Zoning Ordinance (they) merely permitted a change from a planing mill, an industrial use, to an ice house, likewise an industrial use, the use being a non-conforming use." Emma D. Roach, trustee, an owner of property in the zone affected, appealed from the order of the Board of Zoning Appeals to the Baltimore City Court, and on petition of the applicant Shane, and wife, they were made parties defendant with the Board of Zoning Appeals, Mrs. Roach becoming the plaintiff, in the proceedings on appeal to the City Court. The action of the City Court, after hearing, was to affirm the order of the Board of Zoning Appeals, that court holding "that a non-conforming use of the premises 1200 Calhoun Street as a planing mill" had been established. From the order of the City Court, Mrs. Roach appeals to this court.

The Ordinance of March 30th, 1931, has made four classifications for uses of property, the two with which we are here concerned being the businesses allowed in the Second Commercial Use Districts, amongst which are ice factories and planing mills, and the next higher classification, First Commercial Use Districts, which includes coal and lumber yards.

In the case of *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743, it was held that the part of the whole lot 50 by 50 feet was located in a Second Commercial Use District, and the erection of an ice factory on that part of the whole lot was properly forbidden by the City Engineer.

Action was then taken by the Mayor and City Council to so amend the ordinance of March 30th, 1931, as to make of the 50 foot corner of the lot a Second Commercial Use District, which allowed the operation of the ice plant. The validity of that amendment to the Zoning Ordinance was not raised below in the present case, so that we do not consider that question on this appeal. Code, art. 5, sec. 10. All that this court decided in *Lipsitz v. Parr, supra,* was that the corner portion of the lot was a First Commercial Use District, and that the permit applied for, an ice factory, was for a lower classification, and did not conform with and was not included in any of the businesses allowed in such a district. The question now is whether the business heretofore conducted by Lipsitz on the balance of the lot is of the same classification, Second Commercial Use, as an ice factory. If the business is or was a planing mill it has the same classification, and Shane would be entitled to a permit to build and operate, if it is or was a lumber yard, he is not so entitled, as the change would be from a higher to a lower classification. There is no abandonment in a change from one business to another of the same classification, provision for such a contingency having been made by paragraph 11 of the Zoning Ordinance, so that we do not have the question decided in *Landay v. MacWilliams,* 173 Md. 460, 196 A. 293, where the question was whether there had been an abandonment or surrender of the non-conforming use by reason of a prolonged vacancy of the premises between the occupancies by two junk dealers. In that case paragraph 11 of the Zoning Ordinance was quoted, construed and applied.

The question here, then, is one of fact.

Lipsitz bought the property in 1930, when there was a small business conducted by a negro, with little planing equipment, and whether the lumber business or the planing mill was merely incidental to the other cannot be ascertained from the record, and, although the business was much enlarged under the ownership of Lipsitz, it cannot now with any degree of certainty be deter-

mined which was the major part of the business. The plaintiff produced witnesses who testified to the amount of planing equipment used in other planing mills in Baltimore, which evidently did business on a much larger scale than did Lipsitz, and, comparing it with his equipment, relied largely on this evidence to convince the court that Lipsitz was not in the planing mill business. The plaintiff (appellant) called as a witness the auctioneer who sold all of the stock and equipment after the sale to Shane, except "a couple of machines (which) had been sold about two weeks previously, and also a lot of lumber and millwork." He sold at the auction twelve motors varying from three to twenty horsepower, which operated as many machines. The only evidence as to the size, nature and character of the business and work done came from Lipsitz, who said, on cross-examination, he employed "just a few men. * * * We were working on a small scale." Asked, "Give us some idea of how much planing you did, and how many men you employed? he answered. "At different times—sometimes only two, or three, sometimes; it depended on how much the business required." "Q. Did you do any planing for anybody else? A. No, for our own use; I used to manufacture different things, windows, doors, and even caskets. Q. Caskets? A. Yes, sir, which we have some on hand now."

He was not asked how much lumber he had in stock, or whether any or how much was sold without going through the planing mill. The fact that he did have lumber on the premises would not of itself characterize his business as that of a lumber dealer, as lumber is the raw material of a planing mill. The conclusion of this court is that the only inference from the testimony of Lipsitz and that of the witnesses called by the plaintiff is that the difference between the planing mills about which they testified and the one operated by him is a difference in size, rather than of kind (*Cochran v. Roemer*, 287 Mass. 500, 192 N. E. 58), and that on the whole evidence the City Court could find that Lipsitz

had conducted a planing mill on Calhoun and Winchester Streets in Baltimore, an industry of the same classification as the ice factory, a permit for which was applied for. With legally sufficient evidence that Lipsitz was operating a planing mill and no substantial evidence to the contrary, the presumption, therefore, is in favor of the correctness of the decision of the City Court.

The plaintiff raises the further question that the use of the property by Lipsitz as a planing mill was an unlawful use because he did not show that he had a permit before or since the passage of the Ordinance of March 30th, 1931, No. 1247, to engage in such business at that location, and that, unless he had secured such a permit in accordance with the provisions of Ordinance No. 825, (1926-27) or No. 922, (1922-23), his use of the property was unlawful. Ordinance No. 825 undertook to limit the location of buildings for certain purposes or businesses, including in the list (15) lumber yards, and (16) planing mills, and no permit for the erection of such buildings or a change to such use could be secured without the approval of the Mayor, the ordinance providing for notice by publication of the application. The Ordinance No. 825 was passed after the decision in *Goldman v. Crowther*, 147 Md. 282, 128 A. 50, declaring the use provisions of Ordinance No. 922 invalid. The only evidence in the record of the time a planing mill of any kind or size was on the property was from Lipsitz, who testified he "passed it year after year, and always saw woodwork down there." He had not applied for a permit to operate a planing mill or lumber yard, and did not know one was required. The presumption is that, in the absence of evidence to the contrary, the business was in existence when Ordinances Nos. 825 and 1247 were in effect, as otherwise the city authorities would have forbidden the business without a permit. Ordinance 825 (article 49, section 34, of the City Code) provided that "No building or structure shall be erected, nor shall the existing use of land, buildings or structures be changed without a permit * * * authorizing the erec-

tion of such buildings or structures and use, or authorizing a change of use", thus recognizing the right of persons then engaged in any of the named businesses to so continue. There is a similar provision in Ordinance No. 1247, that none of its provisions should be so construed as to "prevent the continuance of any use" legally existing when that ordinance was passed. *Landay v. MacWilliams, supra.* "Such an ordinance may not operate to remove business found there. The legitimate purpose of a zoning ordinance, * * * relative to a residence district, is to preserve and not to disrupt existing conditions." *Adams v. Kalamazoo Ice & Fuel Co.*, 245 Mich. 261, 222 N. W. 86, 87.

For the reason that we are of the opinion that the City Court was justified in holding that the application was for a change of use in the same classification, the order appealed from will be affirmed.

*Order affirmed, with costs.*