BRUNING BROTHERS, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 137, October Term, 1951.]

*Decided April 3, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Southey F. Miles* for the appellant.

*Solomon Liss*, with whom was *Carroll Mitchell* on the brief, for the intervening appellees.

Submitted on brief by *Thomas N. Biddison, City Solicitor of Baltimore, Edwin Harlan, Deputy City Solicitor,* and *Francis J. Valle, Assistant City Solicitor,* for the Mayor and City Council of Baltimore and Paul A. Cohen, Building Inspection Engineer of Baltimore City, appellees.

MARBURY, C. J., delivered the opinion of the Court.

Appellant, on May 14, 1951, applied to the Building Inspection Engineer of Baltimore City for a permit to build an additional two-story building to its present factory at 4209 East Chase Street, this building to be 60 feet wide and 100 feet long, and to be used as a storage warehouse for paint, etc., and also to move its existing 6-foot fence to the south end of its property. At the time of this application, the property was zoned residential, and therefore the Building Engineer, having no discretion, disapproved the application. An appeal was taken to the Board of Municipal and Zoning Appeals, which sustained the Building Engineer's decision. The owner thereupon appealed to the Baltimore City Court, which sustained the original decision, and from the order of that court, the case comes here.

By the zoning ordinance of 1931, a large tract of land in the northeastern section of the City of Baltimore between Edison Highway on the west, Monument Street on the south, and Erdman Avenue on the north and east, was zoned for industrial use. This large tract included a village, or settlement, known as "Orangeville",

which was an old residential community. By Ordinance No. 687, approved on February 6, 1942, this village property, bounded by Macon Street, Ashland Avenue, Haven Street, Chase Street, a proposed extension of Biddle Street, and Eager Street, was changed from the industrial use district to a residential use district. In December, 1941, the appellant had purchased a lot of ground rectangular in shape, with a frontage of 105 feet 6 inches on the south side of Chase Street, to a depth of approximately 300 feet therefrom running southerly along the west side of Janney Street. This property with within the tract re-districted the following February, but at the time of appellant's purchase, it was in an industrial district. However, the re-districting ordinance had been introduced in the City Council on November 24, 1941. A public hearing was held on it, on January 19, 1942, and a representative of the appellant attended the hearing. While the ordinance was pending, a permit to erect a paint and varnish factory was granted to the appellant. It does not appear exactly when the appellant's factory was completed, or when the ground was broken for it, although we were told at the oral argument by counsel for the appellees that at the time the ordinance was passed, nothing had been done, except perhaps to dig a foundation. This was not denied by counsel for appellant, but even the digging of a foundation may, under some circumstances, give the owner of land a non-conforming use. In any event, it apparently has been since considered by everyone that appellant established a non-conforming use by the erection of its building, and we assume that this is so, although the mere issuance of a permit, and the preparation for construction, does not confer a vested right, nor does it create an estoppel. *Anne Arundel Co. v. Snyder,* 186 Md. 342, 347, 46 A. 2d 689. *Francis v. MacGill,* 196 Md. 77, 85, 75 A. 2d 91, 94.

In April, 1943, appellant made an application to erect a paint storage shed as an extension of its non-conforming use, and this was granted in February, 1944. An addi-

tion to the paint factory for storage and office, and the installation of three tanks for oil and one tank for private use, was permitted upon similar application. In December, 1944, a permit was granted to construct an addition to the paint manufacturing plant. In June, 1945, a permit to erect a storage building and loading platform was denied, but in October, 1945, a permit to erect a two-story addition for storage and office, and a one-story addition for varnish thinning and fume elimination was approved. In April, 1950, a permit to construct a one-story addition for a laboratory was granted.

It had been originally intended that Biddle Street should be extended in such a way as to cut off the northern corner of the appellant's lot. Therefore, its factory and fence and its additions were all set back 60 feet from the south side of Chase Street, and the 60-foot area has been limited to the construction of a loading platform and a ramp, and to parking, loading and unloading purposes. The Planning Department, however, has abandoned the proposed extension of Biddle Street, and the present application is to use this 60-foot space for the proposed storage building. Appellant contends that the denial of its application deprives it of the use of its property, contrary to the provisions of the State Enabling Act for Zoning, and in violation of the constitutions of the United States and of the State of Maryland. In other words, it maintains that the change of its lot from industrial use to residential use imposed restrictions which could not and cannot be practically complied with, made the remainder of the lot not actually built upon valueless for residential use, and that the zoning regulations as to its property are unreasonable and arbitrary.

It appears from the record that "Orangeville", the little unincorporated town within the re-zoned area, is an old community containing about sixty homes, most of them more than fifty years old, and in addition, there is now being constructed in the area twenty-three

brick homes to be sold at a price between $9,000 and $10,000 in fee. The island created by Ordinance No. 687 contained all the homes in "Orangeville". It was apparently thought at the time the 1931 ordinance was passed that this little residential community would rapidly be absorbed by industry, and would lose its character as a residential area, and for that reason it was put in the industrial use zone. In 1942, since this had not come to pass, and since industrial buildings were surrounding it, the City decided to re-zone it in accordance with its actual use. There had been no change in conditions in the re-zoned area, and the re-zoning was in the nature of the correction of an original error, and was not a change in use caused by new circumstances. Appellant earnestly contends that this creates a situation in which the remainder of its lot cannot possibly be used for residential purposes, and that it is deprived of the only present use it can make of its property by the passage of this ordinance and by its application to its lot.

It is, of course, true, and we have so held in several cases, that property cannot be re-zoned for an impossible use merely to protect the property of neighbors. Thus, in *Northwest Merchants Terminal v. O'Rourke*, 191 Md. 171, 60 A. 2d 743, a segment of land adjoining a railroad right-of-way was re-zoned residential. We said that no consideration at all was given to the character of the district, and its peculiar suitability for particular uses, or to encouraging the most appropriate use of the land, or to anything except gratifying the wishes of an organized neighborhood. We held the ordinance invalid as applied to the property adjacent to the railroad, because we found there was no possible residential use which could be made of it. Again, in the case of *Hoffman v. Mayor & City Council of Baltimore*, 197 Md. 294, 79 A. 2d 367, the owner of a tract of land which had been zoned residential in the original zoning act, but which the majority of the court found could never have been used for that purpose, was asking for a right to establish

a storage yard on this lot. The court said that the original zoning act was mistaken, and created an arbitrary situation for the establishment of a buffer to protect residences, that the original zoning was invalid, and, therefore, the permit should be granted. In *Kracke v. Weinberg*, 197 Md. 339, 79 A. 2d 387, a tract originally zoned commercial was zoned residential to protect the neighbors, and we held it had never been used for residential purposes, could not be used for residential purposes, and that the ordinance so classifying it was invalid as to it.

These cases are all unlike the one before us. The properties in them, zoned residential, had never had any residential possibilities, and, with the passage of years, the situation there grew worse instead of better. In the present case, the property apparently always had residential possibilities, and the present destruction of these possibilities on this particular lot was caused by the appellant's construction of its paint factory. The mere fact that 60 feet in front of it cannot for the moment be used as a residence, does not necessarily justify us in saying that the ordinance was invalid as to this lot when it was passed. Conditions which make the 60-foot strip impossible for residential purposes were created primarily by the appellant itself, and we are not prepared to use its own actions as a basis for a decision by this court that the City was wrong when it passed the ordinance at a time when the property could have been used for residential purposes.

We think the case resembles *Gleason v. Keswick Improvement Association*, 197 Md. 46, 78 A. 2d 164. In that case, the Board of Municipal and Zoning Appeals granted appellants a right to erect a store on their property situated in a residential use district. The Baltimore City Court reversed that action, and on appeal we said that before the appellants purchased the property, it had been used for residential purposes, that they had permitted it to deteriorate, and that it was a fair inference that they bought it with the view of changing

its classification so as to permit them to erect a store on the lot. We concluded that they could not claim they suffered a peculiar hardship that entitled them to a special privilege, where they themselves created the conditions which brought about that situation.

There is, however, another ground upon which we think appellant is entitled to a permit. Since we have no information from the record just how far appellant's original building had been completed when the re-zoning ordinance was passed, we assume, as we have stated, that that building, and the additions, and the adjacent land used in connection with the use of the buildings, constitute a non-conforming use in the Orangeville island. The front sixty feet is so used, and the proposed building would only be a change in such a use, and not an extension. (See *Colati v. Jirout,* 186 Md. 652, 657, 47 A. 2d 613.) Under these circumstances, we think the permit should be granted for a change in use permitted by the ordinance. The order of the Baltimore City Court will, therefore, be reversed, and the case remanded for the passage of an order in accordance with this opinion.

*Order reversed with costs and case remanded.*