BENSEL et ux. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 55, October Term, 1953.]

*Decided January 11, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Abram C. Joseph,* with whom were *Robert H. Williams, Jr.,* and *Daniel C. Joseph* on the brief, for the appellants.

Submitted on brief by *Thomas N. Biddison, City Solicitor of Baltimore City, Edwin Harlan, Deputy City Solicitor,* and *Francis J. Valle, Assistant City Solicitor,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City dismissing appellants' amended bill of complaint which sought an injunction to restrain the Mayor and City Council of Baltimore from interfering with the use and occupation of their property at 3105 Mareco Avenue in Baltimore City.

Appellants purchased this property in October, 1927, and claim that continuously, since April, 1928, they have used a part of the house for business purposes. Henry J. Bensel, one of the appellants, is engaged in the service and repair of refrigerating units on ships. He said that when he started his business in 1928, he installed shelves on one wall of the cellar of his house in order to keep small and delicate parts, used in his business, dry and warm at all times. At the same time he had a telephone installed in his house to receive business calls. He said he used a small desk there in connection with the operation of his business. The larger and less delicate parts used in his business, as well as delivery trucks, are not kept at the dwelling but at a place on Erdman Avenue, in a commercial zone, and are not concerned in this case.

Appellants claim that in 1948 they had some trouble with a person, next door, over the manner in which an automobile was parked in a back alley. Bensel said as a result thereof a City Zoning officer told him that he had to cease business at his home immediately or he would be prosecuted to the full extent of the law. Bensel then consulted his attorney. On September 30, 1948, appellants filed an application with the Bureau of Building Inspection "to continue to use the place of residence of Henry J. Bensel and his wife, located at Mareco Avenue, Baltimore 13, Maryland (as above described), as an office in second floor rear room for the purpose of conducting a refrigeration business, including the selling of refrigeration equipment and storage of small parts in the basement of the premises, in the same manner he had been doing continuously since April, 1928." This permit was refused by the Zoning Commissioner and an appeal was taken to the Board of Municipal and Zoning Appeals, (the Board). A hearing was held before the Board on October 19, 1948. It was stipulated that at that hearing "upon the conclusion of the testimony of the appellant, Mr. Henry J. Bensel, the Acting Chairman of the Board asked if the testimony of the other witnesses on behalf of the appellant would be the same as the testimony of the appellant, and it was stated that said witnesses would corroborate appellant's testimony, whereupon the Acting Chairman of the Board replies that it would not be necessary to hear those witnesses." Two protesting witnesses were also heard. The Board found there was not sufficient evidence to warrant a finding that a non-conforming use, of a commercial classification, had been established and sustained the action of the Zoning Commissioner in disapproving the permit. From that finding an appeal was taken to the Baltimore City Court on October 29, 1948. The case was heard in that court on February 14, 1952, the parties being the same as in the instant case. The appellants claim that a large number of their witnesses were assembled

in the courtroom but the trial judge would not hear any additional evidence, but confined the case to the transcript of the testimony before the Board. After reviewing that record and hearing arguments of counsel, Judge Warnken, on the same date, affirmed the action of the Board and entered a judgment in favor of the defendant for costs. No appeal was taken from that judgment to this Court.

On April 26, 1952, the appellants filed in the Circuit Court of Baltimore City an amended bill of complaint in which they made the following allegations. Henry J. Bensel, since April, 1928, had been engaged in the business of selling, repairing and installing refrigeration equipment on vessels from his home, where he stored parts in his basement. A telephone had been installed on the premises for the purpose of receiving business calls. One room on the second floor was equipped with a desk where the books of the business were kept. As a result of a quarrel with one of their neighbors, appellants were advised that notwithstanding the existence of their non-conforming use of the property, their right to continue said use could be established only by application to the Zoning Board for a permit or license to continue the business. The appellants recited the details of the hearing before the Board to establish their non-conforming use and the denial of the permit by the Board. They also alleged the appeal to the Baltimore City Court and the result thereof, stating that the presiding judge declined to hear any additional testimony. They asked that an injunction be granted restraining and enjoining the Mayor and City Council of Baltimore from interfering in any way with the use and occupation of the premises. They also asked for a declaratory decree, declaring that they had a non-conforming use in the property. After answer filed, testimony was taken before Chancellor Byrnes in the Circuit Court of Baltimore City. On April 17, 1953, he dismissed the petition of the appellants on the ground that the matter had been previously determined by

Judge Warnken. From that order appellants appeal here.

As to the complaint of appellants that the Baltimore City Court refused to hear additional testimony and decided the case on the record before the Board, this Court said in *Mayor and City Council of Baltimore v. Shapiro*, 187 Md. 623, decided February 12, 1947, at page 631: "Even if we assume, for the purposes of this case, that the Court, on review, has not only the right but the duty to hear additional evidence if 'it shall appear to the court that testimony is necessary for the proper disposition of the matter' (Code, Art. 66B, Sec. 7), some latitude must be allowed to the trial Judge in passing upon a proffer in a particular case. The Board is the body to which decision is 'principally committed', and it is incumbent upon a party to produce evidence before that body before seeking a review of the Board's action. Compare *Hathcock v. Loftin*, 179 Md. 676, 22 A. 479." Furthermore, there was no appeal from the refusal of Judge Warnken to hear additional testimony in that case. If such an appeal had been taken, this Court might have remanded the case for the taking of further testimony as in *Dorman v. Mayor & City Council of Baltimore*, 187 Md. 678, decided March 13, 1947.

Paragraph 13(f) of the Zoning Ordinance No. 711, adopted May 21, 1953, and not in effect at the time this case was decided below, now provides: "Whether a non-conforming use exists or whether a non-conforming use has been abandoned shall be a question of fact and shall be decided by the Board of Municipal and Zoning Appeals after public notice and hearing and in accordance with the rules of the Board. However, where the records, permits and the Police Survey of 1931, all filed in the office of the Zoning Commissioner, show the existence of a non-conforming use on March 30, 1931, and the continued, uninterrupted use thereof to the date of inquiry or application and a field inspection confirms the record by virtue of the construction, design and arrangement of the building or use in question, the

Zoning Commissioner may issue a certificate of occupancy without referring the matter to the Board of Municipal and Zoning Appeals."

Paragraph 11, of Zoning Ordinance No. 1247, in effect at the time this case was tried below, provided: *"Non-conforming Uses.* A non-conforming use is a use that now exists and that does not comply with the regulations for the use district in which it is established. A non-conforming use may not be extended, except as hereinafter provided, but the extension of a use to any portion of a building, which portion is now arranged or designed for such non-conforming use, shall not be deemed to be an extension of a non-conforming use. A non-conforming use may be changed to a use of the same classification or to a use of a higher classification. A non-conforming use, if changed to a use of a higher classification, may not thereafter be changed to a use of a lower classification. If a use, for which an ordinance is required under the provisions of Section 4, is changed to a use for which no ordinance is required under those provisions, it may not thereafter be changed to a use for which an ordinance is required without such an ordinance. Nothing contained in this Article shall be construed to prevent the continuance of any use which now legally exists." Paragraph 41, of Zoning Ordinance No. 1247, in effect when this case was tried below, provided: *"Procedure in Case of Non-Conformity.* If, on an inspection, the condition of a building or land or its use or occupancy are found not to conform to the requirements of this ordinance or the conditions of an existing certificate of occupancy, the Zoning Commissioner shall at once issue written notice to the owner, specifying the manner in which the building or land or its use or occupancy fails to so conform, and the owner shall at once take steps to make it so conform, as directed by the Zoning Commissioner; and the Zoning Commissioner shall order the use or the occupancy of the building or land modified or the building or land vacated or building operations stopped until its condition

is made to conform to the requirements of this ordinance, at which time a certificate of occupancy shall be issued as herein provided." Under this section the Zoning Commissioner had the right to issue a written notice to the appellants of the non-conformity. Section 34(d), of Zoning Ordinance No. 1247, provided in part: "Appeals to the Board of Municipal and Zoning Appeals may be taken by any person aggrieved, or by any officer, department, board or bureau of the municipality affected, by any decision of the Zoning Commissioner." It therefore appears that the Board had jurisdiction to hear the appeal from the notice given the appellants by the Zoning office that their property did not conform with the Zoning Ordinance.

In *Chayt v. Board of Zoning Appeals,* 177 Md. 426, decided December 13, 1939, the question was whether adjacent vacant land which had been held for expansion of a non-conforming business and included in a comprehensive plan for expansion sketched out before 1931, could be regarded as in use. The Board of Zoning Appeals held that the non-conforming use existed. The action of the Board was sustained by the Baltimore City Court and reversed by this Court on appeal where it was held that a non-conforming use was not existing. In *Roach v. Board of Zoning Appeals,* 175 Md. 1, decided June 14, 1938, the question was whether a former owner had operated a planing mill on the property prior to the Zoning Ordinance. If so, it was conceded that an ice factory might be authorized as falling in the same classification. The Board of Zoning Appeals and the Baltimore City Court held that a non-conforming use existed. This was affirmed by this Court. In *Dorman v. Mayor & City Council of Baltimore, supra,* the question was whether a non-conforming use in a second commercial use district had been abandoned by the former owners of the property or changed by them to a use of a higher classification. If it had not been so changed to a use of a higher classification, this Court there said: "* * * it would seem that no 'permit' or

'certificate of occupancy' (Par. 36, Zoning Ordinance, No. 1247, approved March 30, 1931) would be required to 'continue' the non-conforming use (Par. 11). If, however, the non-conforming use had been abandoned, then the 'permit' or 'certificate of occupancy' would be unlawful and approval of it should be reversed. A similar question of abandonment was raised and decided on application for a 'certificate of occupancy' in *Landay v. Board of Zoning Appeals,* 173 Md. 460, 462, 463, 196 A. 293, 295, 114 A. L. R. 984." The Board of Zoning Appeals found the non-conforming use existed. This action was affirmed by the Baltimore City Court. This Court, however, remanded the case for further testimony. In *Bruning Bros. v. Mayor & City Council of Baltimore,* 199 Md. 602, decided April 3, 1952, the appellant had applied to the Building Inspection Engineer of Baltimore for a permit to build an additional two story building to its present factory as a special exception in an area zoned residential. This permit was refused by the Building Inspector, and also refused on appeal by the Board and the Baltimore City Court. On appeal here the decision of the Baltimore City Court was reversed on the ground that a non-conforming use existed, although that reason for the grant of the permit had not been raised below. In *Fritze v. City of Baltimore,* 202 Md. 265, 96 A. 2d 4, decided April 17, 1953, a permit for the erection of a florist shop on land which appellant claimed had existed as a non-conforming use, was denied by the Zoning Commissioner, the Board, and the Baltimore City Court. This action was affirmed by this Court for the reason that the evidence did not establish that the land was used in connection with a non-conforming use. From these cases it is clear that the Board and the Baltimore City Court on appeal have frequently decided whether or not a non-conforming use exists on specific property. The jurisdiction of the Board and the Baltimore City Court to so decide has apparently not been previously questioned. In *Knox v. City of Baltimore,* 180 Md. 88, decided December 4,

1941, a resolution was adopted by the Board finding that a non-conforming use had been established. Later another resolution was passed by the Board that a non-conforming use had not been established. This Court there held that the first resolution of the Board was not *res judicata* as to the second resolution because the Board was not "a court of competent jurisdiction or judicial tribunal". There was no contention there that the Board did not have jurisdiction to pass the resolution in the first instance. The decision in the *Knox* case, *supra,* was based on *Baltimore v. Linthicum,* 170 Md. 245, decided February 20, 1936. In *Church v. Zoning Appeals Board,* 175 Md. 7, decided June 14, 1938, it was held that persons who could have been parties to an appeal from the Board to the Baltimore City Court, but failed to participate therein, were bound by the decision.

Zoning Ordinance, No. 1247, in effect at the time this case was heard before the Board and in the Baltimore City Court, provided in part: "39. *Court Review.* (a) Any person or persons jointly or severally aggrieved by any decision of the Board of Municipal and Zoning Appeals, or any taxpayer, or any officer, department, board or bureau of the municipality, may present to the Baltimore City Court a petition, duly verified, setting forth that such decision is illegal, in whole or in part, and specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after filing of the decision in the office of the Board. (b) Upon the presentation of such petition, the court may allow an appeal to review such decision of the Board of Municipal and Zoning Appeals * * *." As the Baltimore City Court had jurisdiction over the subject matter, invoked by the appellants themselves, its decision was *res judicata,* and conclusive of the rights of the parties. *Baltimore v. Linthicum, supra; Riggs v. Loweree,* 189 Md. 437; *Ugast v. LaFontaine,* 189 Md. 227; *Snodgrass v. Stubbs,* 192 Md. 287.

In *Baltimore v. Linthicum, supra,* a first application for a permit for the use, made in January, 1933, was

refused because it was considered to be a business use prohibited by the Zoning Ordinance. In October of the same year a second application was made by the same petitioner for the same use and from the refusal in that instance, on the same ground, an appeal was prosecuted to the Baltimore City Court, as permitted by law. After due hearing the action of the Board of Zoning Appeals was affirmed by the Baltimore City Court. At that time no appeal was provided to this Court. With a view to having an appealable order passed, Linthicum sought a writ of *mandamus* to compel the buildings engineer to issue the desired permit, but the proceeding was held inappropriate and no appeal was taken. Later, by the Act of 1935, ch. 448, an appeal was allowed under the Zoning Ordinance to this Court. On September 20, 1935, Linthicum made a third application for the same use. It was conceded that there had been no change either in the procedure, the use, neighborhood conditions, or in the relevant ordinances, and the Board of Zoning Appeals again refused the permit. The Baltimore City Court on appeal from the third application reversed the action of the Board and the City appealed to this Court, which held that the decision of the Baltimore City Court on the second application was *res judicata* as to the third application. Chief Judge Bond said in that case: "The effect of the decision on the earlier appeal to the Baltimore City Court presents a foremost question. No appeal having been allowed from that decision, it is questioned whether the rule of *res judicata* ordinarily applicable could give it a binding effect, now that the case has reached this court under the Act of 1935. The rule is not so qualified. It is a rule limiting parties to one final decision from the courts on one controversy between them. 'An existing, final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon matters within its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other

judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit.' *Christopher v. Sisk,* 133 Md. 48, 51, 104 A. 355, 356; *Emmert v. Middlekauff,* 118 Md. 399, 404, 84 A. 540." *Knox v. City of Baltimore, supra,* 92-93.

The appellants, in claiming that *res judicata* does not apply here, rely on *McComas v. Wiley,* 134 Md. 572, and *Wiley v. McComas,* 137 Md. 637. The first case was an appeal from the Orphans' Court and involved the question as to whether Mrs. Wiley survived her husband and as to who was entitled to personal property. Reversing the Orphans' Court this Court on appeal decided that the husband died first and the administrator of her estate was entitled to the personal property in controversy. The second case was a suit in ejectment by the heirs of Mrs. Wiley against the heirs of her husband to recover the real estate of which he was seized at the time of his death. This Court in the second case held that *res judicata* did not apply and asserted the well-known principle that in order that a prior judicial decision may be conclusive of a question raised in a separate suit, it must have been a final judgment on the merits, rendered in the exercise and within the scope, of competent jurisdiction, and the subject in both causes must be identical. This Court in the second case also pointed out that the first case was a proceeding to assert a claim to personal property; that the proceedings in the first case were certainly not *in rem* so far as the real estate was concerned; that the first case determined the conflicting claims asserted by administrators who sustained no relation of privity with the heirs at law by whom the second case was prosecuted and defended; and also that the issue in the second case was one which the Orphans' Court had no authority to determine. Those cases are not helpful here.

We must find that the chancellor was correct in holding that the question was *res judicata* by the former decision of the Baltimore City Court, and in dismissing the bill of complaint.

*Decree affirmed, with costs.*