MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* WEINBERG ET UX.

[No. 104, October Term, 1953.]

258

*Decided March 24, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Francis J. Valle, Assistant City Solicitor of Baltimore*, with whom were *Thomas N. Biddison, City Solicitor*, and *Edwin Harlan, Deputy City Solicitor*, on the brief, for the Mayor and City Council of Baltimore and Paul A Cohen, Building Inspection Engineer of Baltimore City.

*Julius G. Maurer for* John L. Matthews.

*Paul F. Due*, with whom were *Due, Nickerson, White-ford & Taylor* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decision of the Baltimore City Court reversing the Board of Municipal and Zoning Appeals of Baltimore City, (the Board).

On March 26, 1952, the appellees, Harry Weinberg and Jeanette Weinberg, his wife, applied to the Buildings Inspection Engineer and Zoning Commissioner for a certificate of occupancy as a non-conforming use, to use a building thirty feet by seventy-six feet for the storage of hardware, sheetrock, nails, and cement. This building is located on a lot two hundred and ten feet by one hundred and seventy-five feet, which, by Zoning Ordinance No. 1247, approved March 30, 1931, is in a Residential Use District. No portion of the lot, except the building, is here involved. This building, on the north east corner of the lot, is separated on its northeast side by a ten foot alley from another lot of the appellees which, as the result of the cases of *Weinberg v. Kracke*, 189 Md. 275, and *Kracke v. Weinberg*, 197 Md. 339, is now zoned Second Commercial and Industrial. This other land of the appellees in those cases was shown to be very rough in contour with a large stream running through it and is now rented for a lumber business to Mr. Nathan Egorin. The building, here, has no possible use for residential purposes and appellees desire to rent it to Mr. Egorin, who conducts the lumber business on the adjoining lot, to use in connection with that business.

The application of the appellees was disapproved and an appeal was taken to the Board where three hearings were held. At the first and second hearings the Board held that there was not sufficient evidence to establish a non-conforming use. After the second hearing the matter was remanded by the Baltimore City Court to the Board for a third hearing to permit the appellees to offer in evidence a City record consisting of a report, dated July 24, 1931, by Officer Herz, of the Baltimore Police Force, as to the use of the property here in question. As a result of that third hearing, the Board, by a vote of three to two, again denied the permit. An appeal was then taken and the trial judge on a review of the record of the three hearings before the Board, and without any additional testimony, found that the building had been used continuously from 1928 until April, 1950, for non-conforming purposes, and from that time until January, 1952, the appellees attempted unsuccessfully to rent the property. By order he reversed the action of the Board. From that order appellants appeal.

Paragraph 11, of Zoning Ordinance No. 1247, adopted March 30, 1931, and in effect at the time this case was tried below provided:

> "Non-Conforming Uses. A non-conforming use is a use that now exists and that does not comply with the regulations for the use district in which it is established. A non-conforming use may not be extended, except as hereinafter provided, but the extension of a use to any portion of a building, which portion is now arranged or designed for such non-conforming use, shall not be deemed to be an extension of a non-conforming use. A non-conforming use may be changed to a use of the same classification or to a use of a higher classification. A non-conforming use, if changed to a use of a higher classification, may not thereafter be changed to a use of a lower classifica-

tion. If a use, for which an ordinance is required under the provisions of Section 4, is changed to a use for which no ordinance is required under those provisions, it may not thereafter be changed to a use for which an ordinance is required without such an ordinance. Nothing contained in this Article shall be construed to prevent the continuance of any use which now legally exists."

The question here is whether a non-conforming use existed as to this building on March 30, 1931, when the Zoning Ordinance was adopted and, if so, whether that non-conforming use has been abandoned. By Paragraph 8 of Zoning Ordinance No. 1247, storage yards for building materials and livery stables are non-conforming uses in a Residential Use District. It was said in *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 430: "There is no dispute of the non-conformity of use as a stable in this [a residential] district." Of course, the courts will not disturb the finding of the Board if the record shows substantial evidence to sustain that finding. *Heath v. Mayor & City Council of Baltimore,* 187 Md. 296, 304.

The pertinent evidence follows. Harry Weinberg, one of the appellees, testified that he purchased the property in 1939. In 1946 he filed an application to use the building for the storage of building materials but later withdrew that application. From 1939 until April, 1951, he rented the building as a horse stable. The neighbors complained to the tenant who then gave up the building. Mr. Weinberg was unable to get another tenant for stable purposes. He then rented it for the storage of machinery upon the statement by the tenant that he had approval from the Buildings Engineer's office to so use it. When he found that the tenant had not filed an application for that use and had "lied" to him, he removed the tenant. Since that time he has posted a "For Rent" sign on the property but has been unable to get a tenant until this time when Mr. Egorin wants to rent it. He further testified that he had lived in,

and had been familiar with, the neighborhood as a boy. Since before 1931 this building was used as a stable. During its vacancy children had broken the windows which would be repaired by Mr. Egorin.

A Mrs. Kracke testified that she had been living in the neighborhood for thirteen years. When she moved there a Mr. Ross stabled four or five horses in the building. It had been used as a stable "until the last year or so". Mrs. Julia Kramer had been living in the block for forty years. The building had been used as a stable but she did not know for how long. A Mrs. Bender testified that she had lived in the neighborhood for forty years. She said that horses had been kept in the building but she did not know for how long. Mr. John L. Matthews, one of the appellants, who lives at 905 Wilmington Avenue, adjoining the lot on which the stable is located, stated that he had been living there for twenty-four years. At the time he moved there the building here in question was put up by Mr. Gerber as a shed for the storage of lumber. It was later enlarged and became a stable large enough for twenty horses. It has been vacant for "a year or more" and during that time a "For Rent" sign has been placed on the lot. At the second hearing Mr. Matthews testified that he had been living there for thirty years. When he first moved there the building in question was not erected. In 1928 a smaller building was there for the storage of tools and large enough to keep a pony there for Mr. Gerber's son. That building was torn down and the present building was not built until three or four years after 1928. At the third hearing Mr. Matthews testified that the previous small building was put there by Mr. Gerber for the storage of lumber and no other lumber was put on the lot.

Mrs. Mabel Gerber testified that she was the widow of a former owner of the property. He took out a permit to build two houses about 1931 or 1932. The building in question was not there at that time. He then put up the building for the storage of lumber and later brought his horses there from his riding school. She

further said her husband built five houses at 902, 903, 904, 905, and 906 Wilmington Avenue. At the time he built the houses he also built the building here in question for the storage of lumber. At a subsequent hearing Mrs. Gerber testified that her husband built some of the houses in 1928 and at that time he built a part of the building here in question for the storage of lumber.

Mr. Burgee testified from the Baltimore City records that houses were erected at 903 and 905 Wilmington Avenue in 1928. This confirms Mrs. Gerber's testimony that this lumber shed was originally built in 1928 for the storage of lumber for those two houses. Mr. Walter A. Kratz testified that his father rented this building as a place to keep his horses in 1949. When his father died in 1950, he rented it for the same purpose. He further said that his father bought a pony for him from Mr. Gerber on this lot in 1929, and that Mr. Gerber had four other ponies and two horses there at that time. At the third hearing there was offered in evidence an inspection report from Officer William F. Herz, as aforesaid, of the Baltimore City Police Department, dated July 24, 1931, less than three months after the passage of the Zoning Ordinance. This report showed that the lot, upon which the building in question is erected, was at that time used for the storage of second hand lumber. This survey was evidently made by the police in order to obtain a record of non-conforming uses.

The appellants contend that because this building has never been assessed, the non-conforming use has not been established. However, Mr. Burgee testified that builder's shacks are normally not assessed unless a permit is taken out. No permit was ever taken out for this building, although permits were issued to Mr. Gerber in 1928 for the construction of the two dwellings, incidental to which the shed apparently was used. The appellants also rely on *Gleason v. Keswick Improvement Association,* 197 Md. 46, 50, 51, where this Court held that because the residence in question had been allowed

to deteriorate, it was evident that the residence was bought with a view to changing its classification. There appears in the instant case no evidence that the appellees intended to abandon the non-conforming use. It is not contradicted that a "For Rent" sign has been placed on the property during the time it has been vacant. According to the testimony here, the deterioration was caused by vandalism during the vacancy. It was held by this Court in *Landay v. Zoning Appeals Board,* 173 Md. 460, 471, where the owner permitted the storage of furniture on his property for a short period, and did not continue for three years the use of the property as a junk shop for the reason that he could not so rent it, that it might reasonably be assumed that it was vacant during that period, not because the owner had abandoned the non-conforming use, but because he was unable to rent for that or for any use. See *Roach v. Zoning Appeals Board,* 175 Md. 1, 4; *Dorman v. Mayor & City Council of Baltimore,* 187 Md. 678, 684. Also there does not appear to have been a mere casual use of the property as in *Beyer v. City of Baltimore,* 182 Md. 444.

It is, of course, true that the Board had the opportunity of seeing and hearing the witnesses, which privilege was not that of the trial judge. However, at the conclusion of the first hearing, when the application was denied, the Board found that some evidence had been offered to show that the building had a non-conforming use since its construction "prior to the passage of the Zoning Ordinance * * *. It appears to the Board that the building was constructed for the temporary storage of lumber used in the building of houses in this block on both sides of the street." It was later shown that two of these houses were built in 1928. The Board also found that there were witnesses who testified that the building was erected after the passage of the Zoning Ordinance. After the second hearing when the application was again denied, the Board found that: "Witnesses testified at the hearing today that there had been horses stabled here since

prior to the passage of the Zoning Ordinance. A witness at the previous hearing had testified that this building was constructed by her husband, a builder, incident to the construction of dwellings on the lot. An examination of the records of the Board of Zoning Appeals, Building Engineer's Office, and Bureau of Assessment, indicates that two dwellings were constructed, approved by the Board of Zoning Appeals in 1928, and assessed in 1928 for the year 1929. There were witnesses opposing the permit that testified that the building in question was not there prior to the passage of the Zoning Ordinance and that there was only a small shed; they also testified there were maybe four or five horses brought there after the passage of the Zoning Ordinance, though one witness for the applicant testified there were as many as thirty horses there, kept by his father." After the third hearing when the report of the Police Officer was filed three of the five members of the Board denied the application for the reason that the evidence was not sufficient to establish a non-conforming use.

There does not appear to be any error in the interpretation by the Board of the testimony of the witnesses whom they saw and heard. However, three of the members did not give proper consideration to the fact that the wife of the man who built two of the houses in 1928 testified that the shed was constructed at that time; that Mr. Matthews said that a small building was there for the storage of tools in 1928; that Mr. Weinberg stated that the building had been used for a stable since before 1931; that Mr. Kratz testified that his father bought him a pony from the lot in 1929; and that the police report, made July 24, 1931, showed that the lot was used then for the storage of second hand lumber. We are of opinion that the trial judge was correct in finding that the part of the lot on which the building here in question is erected was used, since 1928 until it became vacant, either for the storage of second hand building materials or for a stable, both of which were non-conforming uses in a Residential Use District. "A non-conforming use may be changed to a use of the same classification

or to a use of a higher classification." Paragraph 11, supra; *Roach v. Zoning Appeals Board*, supra, 4. The trial judge was also correct in finding that since the last tenant had quit using the building, the landlord had attempted to rent it for non-conforming uses, *Landay v. Board of Zoning Appeals, supra*, and therefore the non-conforming use had not been abandoned. He was therefore justified in reversing the action of the Board for the reason that its decision was so far contrary to the substantial weight of the evidence as to be arbitrary and unreasonable.

The Board in this case seems to have mistakenly thought that it should exercise its discretion. The Chairman of the Board said during the second hearing: "There are many more things connected with it, continuity of non-conforming use, converting a stable to a different use in which the Board can use its discretion * * *." That the Board had no discretion in this matter is shown from the following in *Hare v. City of Baltimore*, 200 Md. 477, at pages 485 and 486: "The Zoning Ordinance does not prevent the continuance of any non-conforming use existing at the time of the passage of the ordinance in 1931. Non-conforming buildings existing at that time are allowed to stand and non-conforming uses are allowed to continue. It is anticipated 'that time will repair the mistakes of the past'. *Colati v. Jirout,* 186 Md. 652, 655, 47 A. 2d 613, 614; *Beyer v. City of Baltimore*, 182 Md. 444, 446, 34 A. 2d 765; *Bruning Bros. v. Mayor and City Council of Baltimore, et al.,* 199 Md. 602, 609, 87 A. 2d 589, 592. A non-conforming first commercial use existing at the time the Zoning Ordinance was enacted there can be no valid objection to the change to the use requested, which is not of a lower classification, * * * *Moylan v. School Comrs.,* 180 Md. 316, 319, 24 A. 2d 297, and cases there cited; *Mayor & C. C. of Baltimore v. Shapiro*, 187 Md. 623, 632, 51 A. 2d 273."

The order will be affirmed.

*Order affirmed, with costs.*