HIGGINS *v.* MAYOR AND CITY COUNCIL
OF BALTIMORE ET AL.

[No. 25, October Term, 1954.]

*Decided January 12, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*James N. Phillips*, with whom were *John W. Sloan, Fletcher Krause* and *Phillips, Sloan & Krause* on the brief, for the appellant.

*Francis J. Valle, Assistant City Solicitor of Baltimore*, with whom were *Thomas N. Biddison, City Solicitor*, and *Edwin Harlan, Deputy City Solicitor*, on the brief, for the Mayor and City Council of Baltimore.

Submitted on brief by *William Greenfield* and *Irvin Shaffer* for the co-appellees, the intervenors.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court affirming an order of the Board of Municipal and Zoning Appeals (of Baltimore) which denied the appellant's application to use twenty garages owned by her for the storage of non-inflammable goods and materials (other than automobiles). The appellees are the City of Baltimore, the Building Inspection Engineer, who had originally denied the appellant's application, and three taxpayers and owners of property in the neighborhood of the garages, who had protested before the Board against the granting of the appellant's application and

who intervened in the proceedings in the Baltimore City Court after the case had been submitted and while it was awaiting decision.

The questions presented are with regard to the nature and extent of a non-conforming use or uses of the garages and the effect of amendments to the zoning provisions of the Baltimore City Code, 1950 Edition, adopted on May 21, 1953. Because of the course which this case has followed, some emphasis upon the chronology of events appears desirable.

In 1928 the appellant and her husband bought the property in question for $13,500. It is situated in the rear of the 2400 block of Linden Avenue and is bounded on its northwesterly, southwesterly and southeasterly sides by alleys. Its northeasterly side abuts upon a lot which fronts on Linden Avenue. The single structure on the premises is divided into twenty stalls or garages having an aggregate area of approximately 3600 square feet and was originally designed and used for the storage of automobiles. At some time prior to March 30, 1931, one of the garages was rented partly for use as such and partly and incidentally for the storage of other things; and another garage was rented to the same tenant—apparently not long after March 30, 1931, for the storage of property other than automobiles. Though the testimony is rather vague as to dates, it appears that these two garages were rented for the storage of antiques and of building materials for many years prior to 1953.

Ordinance No. 1247 of the Mayor and City Council of Baltimore, known generally as the Zoning Ordinance, was approved on March 30, 1931. It was enacted pursuant to a State enabling act (Acts of 1927, Chapter 705) and repealed earlier ordinances dealing with zoning, and became the controlling law on the subject in the City of Baltimore. It was amended on a number of occasions, and, as amended, it became Article 40 of the Baltimore City Code, 1950 Edition.

The area in which the garages here involved are located was zoned as a Residential Use District under the

1931 Ordinance. For a number of years after 1931 the garages (with the one or two possible exceptions mentioned above) were rented for the use for which they were designed—that is, automobile storage.

The appellant's husband died in 1935 and she thereupon became, and has since remained, the sole owner of the property. In recent years, the testimony indicates, it has become increasingly difficult to rent these garages for their original purpose. The appellant attributes this to the fact that owners of automobiles are now allowed to keep them on the street all night. What, if any, other causes may have contributed to this condition is not shown. There was some testimony on the part of protestants to the effect that there was a shortage of garage space in the neighborhood.

In about March or April, 1953, the appellant rented eight of her garages to a building materials concern for the storage of materials used in the latter's business. It appears that this use of these garages gave rise to complaints on the part of neighboring property owners and to a warning from the Building Inspection Engineer against the continuation of such use. The appellant's statement of facts, which the appellees agree is substantially correct, shows that Zoning Board officials and counsel for the appellant agreed that, rather than have any criminal prosecution against the appellant, the question of the propriety of the storage (as distinguished from garage) use of the building would be tried by the Board, and that in order to commence such proceedings, the appellant filed an application for a permit for such use. For similar procedure see *Bensel v. City of Baltimore,* 203 Md. 506, 101 A. 2d 826; *Nyburg v. Solmson,* 205 Md. 150, 106 A. 2d 483. The statement also shows that the appellant promptly terminated the lease of the eight garages to the building materials company and that it was "clearly understood" that her action in so doing "was not for the purpose of abandoning any rights that she had, but that it simply made for a better atmosphere in which to try the matter and, in view of her

dissatisfaction with them [the building materials concern] as tenants, served the purpose of both parties to the litigation." The statement of facts also shows that "during the time following March, 1953, and until the action of the Building Inspection Engineer, the appellant diligently sought storage tenants for as many of the garages as were vacant on advice of counsel that such rental was proper."

The appellant's application for approval of the use of her garages for the storage of non-inflammable goods and materials (usually referred to below as "storage use", as distinguished from "garage use") was filed with the Building Inspection Engineer on April 24, 1953, and was denied by him on that day; and still on the same day, an appeal from his decision to the Zoning Board was duly filed.

A hearing before the Zoning Board was scheduled for May 12, 1953. Some protestants appeared and were heard, but due to some confusion, which is not explained, the appellant did not appear and was not present at this hearing. On May 13, 1953, the Zoning Board denied the appellant's application, and on June 4, 1953, she appealed from the Zoning Board's order to the Baltimore City Court. Because of the "confusion" above mentioned and pursuant to an agreement of counsel, the Baltimore City Court referred the case back to the Zoning Board to take additional testimony and to report the same to that Court with the Board's findings of fact and conclusions of law. A further hearing was held by the Zoning Board on September 29, 1953, and on the same day, the Board again denied the appellant's application. The case was submitted to the Baltimore City Court on October 20, 1953, and the order now appealed from was entered on March 30, 1954.

On May 21, 1953, Ordinance No. 711 of the Mayor and City Council of Baltimore was approved. This ordinance repealed and reordained with amendments Article 40 of the Baltimore City Code, 1950 Edition, as then in

force. Basically, as already indicated, this was Ordinance No. 1247, of March 30, 1931, as amended up to that time.

On July 15, 1952, this Court had decided the case of *Hare v. City of Baltimore,* 200 Md. 477, 90 A. 2d 217, and held that a group of seven garages in a residential district which were in existence on March 30, 1931, constituted a first commercial non-conforming use in a residential use district in Baltimore City. This decision is stated by both sides in the present case to have been contrary to the administrative interpretation placed on the 1931 ordinance by the Zoning Board and its predecessor.

To dispose of one minor question first, we do not think that the testimony with regard to the use of one garage prior to March 30, 1931, for storage purposes is such as to warrant our holding that the Zoning Board's finding that a non-conforming storage use on that date was not established, was unsupported by the evidence.

The evidence, we think, clearly shows, however, that the garage use of the structure here involved constituted a first commercial non-conforming use at the time of the adoption of the 1931 Zoning Ordinance. The appellees have seen fit to reiterate in this case the City's arguments to the contrary which were rejected in *Hare v. City of Baltimore, supra;* but we regard that case as decisive of this issue. We adhere to that opinion and see no occasion to repeat here what was said there.

Under Paragraph 11 of Ordinance No. 1247 of 1931 and under Article 40, Section 11, of the Baltimore City Code, 1950 Edition, as it stood prior to Ordinance No. 711 of May 21, 1953, the owner of property affected with a non-conforming use could change the use (subject to exceptions not here pertinent) to another non-conforming use of the same or of a higher classification. That is what the appellant claims to have done. *Beyer v. City of Baltimore,* 182 Md. 444, 34 A. 2d 765; *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613; *Landay v. Board of Zoning Appeals,* 173 Md. 460, 196 A. 293; *Roach v. Board of*

*Zoning Appeals,* 175 Md. 1, 199 A. 812; *Nyburg v. Solmson, supra.*

Ordinance No. 711, of May 21, 1953, undertakes to prevent a change in the use of garages from the storage of automobiles to other uses classified as first commercial non-conforming uses. This result is sought to be accomplished by treating garages differently from other non-conforming uses in Residential and Office Use Districts or in Residential Use Districts. A major provision making such a differentiation is contained in Section 13 (e) which declares that "garages for the storage of motor vehicles erected singly or in compartments, tiers or batteries prior to March 30, 1931 or subsequent thereto with approval of the Board of Municipal and Zoning Appeals * * *," in such Use Districts "shall not have the status of First Commercial Non-conforming Uses, * * *." This sub-section concludes with this sentence: "This sub-section shall not be construed to prevent the continuance of such garages as a non-conforming use or their change to a use of similar classification where such garages were used for a use excluded from the Residential Use District (other than garages) on March 30, 1931 and such use has not been abandoned."

Under these provisions some things seem reasonably clear. First, garages built before March 30, 1931, and others built thereafter under permit located in residential areas and recognized by the *Hare* case as constituting first commercial non-conforming uses are now recognized as non-conforming uses; but they are no longer first commercial non-conforming uses, and are not classified with any other kind of use. As a practical matter they are made a class by themselves. Second, the only right of user accorded to their owners is the right to continue to use them as garages, and the right existing prior to May 21, 1953, to change to some other first commercial non-conforming use is cut off. Third, in the case of any such garage buildings used for some other purpose on or before March 30, 1931, if that other purpose was recognized by the Zoning Ordinance effective on that date

as a non-conforming use in a residential use area, and if that other use continued until May 21, 1953 and thereafter, without abandonment, such other use may be changed to another use of the same classification (or a higher one) as that of the use to which they were actually put on and after March 30, 1931. The precise meaning and effect of this third item are somewhat obscure. Its affirmative provisions may be designed to do no more than to make it clear (probably superfluously) that the right to change from one non-conforming use of a building to another is not destroyed merely because the building was originally designed for use as a garage, if (1) it was actually used for some other non-conforming use on March 30, 1931, and (2) that other non-conform-use has been maintained continuously since that date. Its implication, however, seems to be that a new non-conforming use lawfully acquired between March 30, 1931 and May 20, 1953, may not be changed. There is a possible still further implication that the rule of the *Hare* case is intended to be reversed retroactively to March 30, 1931, and that changes from garage use to another first commercial non-conforming use effected between March 30, 1931 and May 20, 1953, though perfectly lawful when made under the *Hare* case and under Section 11 of Article 40 of the Baltimore City Code (1950 Edition) would be invalidated. Such an implication would both run counter to the general rule that zoning regulations are intended to operate in the future (*Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A. 2d 747; *Bassett, Zoning,* 105), and would also encounter the far more serious difficulty that it would be unconstitutional under the holding of this Court in *Amereihn v. Kotras,* 194 Md. 591, 71 A. 2d 865, that a lawfully established non-conforming use is a vested right and is entitled to constitutional protection. A construction which would render this provision of the Ordinance unconstitutional is to be avoided, if possible; and we do not think that a construction in accordance with the

possible implication suggested is required by the language of Section 13 (e).

We hold that if the change from garage use to storage use was effected in this case between March 30, 1931 and May 20, 1953 (inclusive), it has not been nullified by the provisions of Ordinance No. 711, of May 21, 1953. We shall now turn to that question.

At the time when the appellant leased eight of the stalls for the storage of building materials (March, 1953), she was entitled to do so, since she was merely changing their use from one first commercial non-conforming use to another non-conforming use of the same classification. The basis upon which the Building Inspection Engineer threatened to institute criminal proceedings is not clearly stated; but it appears to have been for an alleged violation of the zoning ordinance. Under *Hare v. City of Baltimore, supra,* and under Section 11 of Article 40 of the Baltimore City Code, as in force in March and April, 1953, such a prosecution would not have been legally maintainable. It should also be noted that this Section not only permitted the change from one non-conforming use to another of the same (or a higher) classification, but, after stating a general prohibition against the extension of a non-conforming use, it expressly provided that "the extension of a use to any portion of a building, which portion is now arranged or designed for such non-conforming use, shall not be deemed to be an extension of a non-conforming use." We think that the evidence indicates that these stalls, or garages, which were all parts of one building, were "arranged" for the non-conforming use of storage of property (other than automobiles) without the need for any structural change for such use.

Factually, ten of the fourteen stalls rented in March, 1953, were rented for storage purposes and there was then no valid legal obstacle to the remaining six vacant stalls being so rented, nor would their use for storage purposes then have constituted an extension of a non-conforming use, nor would any permit have been neces-

sary in order to authorize the change. *Hare v. City of Baltimore, supra; City of Baltimore v. Weinberg,* 204 Md. 257, 103 A. 2d 567; *Landy v. Board of Zoning Appeals, supra; Parr v. Bradyhouse,* 177 Md. 245, 9 A. 2d 751. The appellant had gone far beyond the mere "expectation" stage of establishing a use or making a change of use. Compare *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A. 2d 747, and *Dorman v. City of Baltimore,* 187 Md. 678, 51 A. 2d 658. In addition, it seems a reasonable inference that the threat of prosecution, which led to the agreement for submission of the matter for decision by the Zoning Board, may well have prevented the complete consummation of the change to storage use prior to the adoption of Ordinance 711, of May 21, 1953. Under these circumstances, we think this case is distinguishable from the *Chayt* case.

By the time the case came up for the further hearing in September, 1953, Ordinance No. 711 had been passed, and the Zoning Board based its denial of the permit on a finding that a non-conforming use for storage purposes had not been established and on the provisions of the new Zoning Ordinance which, by Section 13, declared that garages of the kind here involved erected prior to March 30, 1931, should not have the status of first commercial non-conforming uses and took away the owner's right to change them from garage use to storage use.

As we have already indicated, we think that the evidence showed that a change of use had been effected prior to the effective date of Ordinance No. 711; and we are of the opinion that the Board's finding to the contrary is against the uncontradicted evidence as to the actual rental and use of ten of the stalls or garages in the spring of 1953, and therefore should be set aside. Compare *City of Baltimore v. Weinberg,* 204 Md. 257, 103 A. 2d 567.

We are also of the opinion that there is no sufficient evidence to show abandonment of the storage use to which at least ten of the stalls had actually been put and to which the appellant attempted to put six more. *Landay*

*v. Board of Zoning Appeals, supra.*

No issue appears to have been raised below as to whether each of the twenty stalls or garages should be dealt with individually or the building should be dealt with as a whole. The greater part of the building in actual use at the time when the controversy developed with the City Zoning Commissioner (the Building Inspection Engineer) was being used for storage of goods other than automobiles. We are precluded by Rule 9 Relating to Appeals from deciding questions not tried and decided below.

In view of our holdings with regard to the change of use of the building prior to May 21, 1953, we think it unnecessary to pass upon the appellant's contention that the 1953 Ordinance deprived her of the only practicable use to which the property could be put and so deprived her of her property without due process of law.

For like reasons we think it unnecessary at this time to pass upon the appellant's claim of discrimination. Because we think that the appellant did effect a change from one non-conforming use to another when she was legally entitled to do so, the order appealed from will be reversed and the case remanded.

*Order reversed and case remanded, with costs to the appellant.*